Argued July 5, reversed and remanded September 21, petition for
rehearing denied December 14, 1966

# NORTHWEST GAS SUPPLY, INC. *v.*
# DOMESTIC GAS COMPANY
### 418 P. 2d 258
### 421 P. 2d 391

*Cleveland C. Cory,* Portland, argued the cause for appellant. With him on the briefs were Clarence R. Wicks and Robert H. Huntington, Portland.

*Lester Epstein,* Portland, *David R. Vandenberg, Jr.,* Klamath Falls, and *Benjamin Parkinson,* San Francisco, California, argued the cause for respondents. Carey and Epstein, Henry A. Carey, Jr. and Lester Epstein, Portland, filed a brief for respondent Domestic Gas Company. David R. Vandenberg, Jr. and B. H. Parkinson, Jr. filed a brief for respondent Klamath Gas Company.

Before PERRY, J., Presiding, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

O'CONNELL, J.

In these actions, which were consolidated for trial, plaintiff, a wholesale distributor of propane gas, seeks to recover amounts allegedly due from the sale of gas to defendants. Defendants counterclaimed alleging that they were overcharged in violation of an agreement by plaintiff not to charge defendants a higher price than that charged other retail distributors. Plaintiff appeals from a judgment allowing defendants to set off against the amounts claimed by plaintiff damages for breach of the alleged agreement.

Plaintiff is a wholly-owned subsidiary of Suburban Gas, a corporation. Suburban Gas is also the parent of wholly-owned subsidiaries engaged in the retail distribution of propane gas in Oregon. Defendants allege that plaintiff entered into an oral agreement with them providing that all gas sold by plaintiff to defendants from refinery sources in California would be at prices no higher than those plaintiff would charge any other customer in Oregon. Defendants contend that this agreement was applicable to sales of gas to all 21 Oregon retail distributors in competition with defendants—including sales to the 12 wholly-owned subsidiaries of Suburban Gas. Defendants also alleged that the parties agreed that plaintiff would pass on to defendants any decreases it received from, or any increases it was required to pay to, firms which supplied it with gas sold to defendants. The evidence established that plaintiff sold to defendants at a price of six cents per gallon and to Suburban Gas' subsidiaries at cost, which was approximately 4.9 cents per gallon.

■ Plaintiff argues that since the alleged oral agreement did not obligate defendants to purchase gas from plaintiff, it lacked mutuality of obligation and therefore there was no contract. Although it is true that defendants were not obligated to purchase gas from plaintiff, the arrangement may be regarded as an invitation by plaintiff for offers and an acceptance of the offers when defendants entered each order with plaintiff, at which time an executory contract arose. The contract became executed when the sales were made pursuant to the order. Plaintiff's contention that no contract was created must be rejected.

■ Plaintiff next contends that, assuming a contract was created, there was no substantial evidence from

which the trial court or jury could conclude that the contract was applicable to sales of gas to the wholly-owned subsidaries of Suburban Gas.[①]

Evidence of the applicability of the alleged contract to the subsidiaries is meager. Mr. Robert Maloney, an officer of one of the defendants, testified that the parties had agreed that "Suburban would treat these two companies [defendants] on as favorable basis as they would sell to any other distributor in that area engaged in a similar type of business." He further testified that he was prompted to enter into the agreement because he was "concerned that Suburban might make prices available to other retail outlets in our neighborhood at lower prices which would permit them to cut our market and undercut our price."

There is no evidence that the parties ever discussed the applicability of the agreement to the subsidiaries. This issue could be resolved by the trier of fact only on the basis of the testimony of Mr. Maloney. Even if the evidence is regarded as establishing that defendants entered into the agreement with the understanding that the term "any other distributor" was intended to apply to the wholly owned subsidiaries of Suburban Gas, this does not conclude the matter. Defendants' unilateral interpretation of the term "distributor" cannot be imposed upon plaintiff as a part of the agreement unless the interpretation is reasonable.

---

[①] By stipulation of the parties only two issues were to be submitted to the jury; all other issues to be tried by the court. The two segregated issues for the jury were as follows:

"1. Did Northwest Gas Supply, Inc. through its agents, make a price contract with Klamath Gas Company and Domestic Gas Company as contended by Klamath and Domestic?

"2. Did Klamath and Domestic make the payments to October 1962 to Northwest with knowledge that the prices were more than the price charged any other customer of Northwest Gas Supply, Inc. in the State of Oregon?"

There can be no doubt that an agreement binding plaintiff to sell to defendants at a price no higher than that charged nonsubsidiary customers would benefit defendants by reducing the danger of competitive underpricing. The agreement would, therefore, be eminently reasonable as applied to such distributors. But a similar agreement applied to sales by plaintiff to Suburban Gas subsidiaries could protect defendants against underpricing by the subsidiaries in the retail market only if the price at which plaintiff sold to the subsidiaries would affect the resale price set by the subsidiaries. Yet the record clearly indicates that the price at which gas was to be "sold" to the subsidiaries was solely a matter of internal arrangement dictated by the parent corporation. The billing procedure used by the parent makes it clear that the price charged the subsidiaries was simply a bookkeeping entry. The parent corporation chose to sell gas to its subsidiaries at cost, thus letting the profit from retail sales show on the books of the subsidiaries.[2] It could as well have sold to the subsidiaries at a price above its cost and recorded in its own books all or a part of the profit on those sales. Thus it could have sold to the subsidiaries at six cents, the price paid by defendants, recording a profit of approximately one cent on its own books and defendants would have had no ground for alleging a breach of the agreement.

It is apparent, then, that an agreement to charge defendants no higher price than that charged Suburban Gas subsidiaries would not provide defendants with any protection relevant to the avoidance of retail underpricing by the subsidiaries.

---

[2] Whether this was done to gain a tax advantage or to obtain some other benefit is irrelevant in the present inquiry.

Further, it seems certain that since defendants knew that Suburban Gas' retail subsidiaries were wholly owned by the parent they could not reasonably have regarded the agreement as having application to the subsidiaries.

In the present case plaintiff sold gas to the subsidiaries at cost. Accepting defendants' interpretation of the agreement, they too are entitled to purchase gas at plaintiff's cost—at least until plaintiff or the parent should decide to change their bookkeeping procedure. Why plaintiff would want to confer this benefit upon defendants without any reciprocal benefit to itself is not explained by defendants.

There being no evidence from which the jury could conclude that the agreement is applicable to sales to the subsidiaries, the judgment of the trial court is reversed and the cause is remanded with the direction to enter judgment for plaintiff as prayed for in its complaint.

Reversed and remanded.

**ON PETITION FOR REHEARING**

Cleveland Cory, Clarence E. Wicks, and Robert H. Huntington, Portland, Oregon, contra.

Before PERRY, J., presiding, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

O'CONNELL, J.

Defendants seek a modification of the mandate in which we directed the trial court to enter judgment for plaintiff as prayed for in its complaint.

Our mandate was predicated upon the assumption that there was no evidence to support any part of defendants' counterclaim. We are now convinced that this assumption was erroneous and that the trial judge as the trier of fact could find that plaintiff's violation of the agreement resulted in a loss to defendants. Therefore, the mandate is modified as follows: The cause is remanded with directions to make findings as to the difference, if any, between the prices paid by defendants and the prices plaintiff charged those

nonsubsidiary customers who were within the terms of the agreement, and also the amount to be credited to defendants on account of the price reduction secured by plaintiff from its suppliers.

Petition for rehearing denied; decree modified.